HANSON, by Guardian *ad litem,* Appellant, vs. WEBER and another, Respondents.

*April 10—May 7, 1940.*

594

For the appellant there were briefs by *Hale & Skemp* of La Crosse, and oral argument by *Thomas H. Skemp* and *Quincy H. Hale*.

For the respondents there was a brief by *Crosby, Schneider & Esch* of La Crosse, and oral argument by *F. W. Crosby* and *F. K. Schneider*.

MARTIN, J. The material facts are not in dispute. Sixth street runs in a northerly and southerly direction and is intersected at right angles by Main street. It is forty-two feet in width from curb to curb and is paved. The accident occurred approximately in the center of Sixth street about one hundred feet south of this intersection. South from Main street, Sixth street extends in a straight southerly direction a distance of two blocks. It is intersected at the first block by King street and at the second block by Cass street, the latter streets both running in an easterly and westerly direction.

In the block south of Main street on the east side of Sixth street there is a gasoline station on the southeast corner of the intersection which has a frontage of eighty-five and six-tenths feet on Sixth street. Immediately to the south of the gasoline station is a store building, known as the Nelson Furniture Store, with a frontage of sixty feet on Sixth street. On the west side of Sixth street and immediately south of Main street there is an open area having a frontage of approximately forty feet on Sixth street. South of this open area is St. Joseph's cathedral, next to it is St. Joseph's hall. Between the cathedral and the hall there is a passageway leading out to the west side of Sixth street from St. Joseph's school, which Donald attended, and which is back of St. Joseph's hall (west).

The defendant Mary Weber was sixteen years of age and attended Central high school. She left school at about 3:35

p. m., and was driving her mother's automobile in a northerly direction on Sixth street when the accident occurred. Donald got out of school at about 3:30 p. m.; he was eight years of age. Donald and some of his schoolmates were swinging on the school grounds for a short time after school. Then it commenced to rain, and he ran through the passageway above mentioned to the west side of Sixth street and across said street to the bowling alley in the store building on the east side of the street. He stayed for a short time in the entrance to the bowling alley, then started to run back (west) across the street to be with one of his schoolmates, who at that time was standing under the eaves of the church in order to be protected from the rain. Donald testified that before crossing Sixth street, he looked up and down the street, saw no cars, and then started to run out into the street, and was hit· when he was just about in the middle of the street. He further testified:

"I ran. The rain got on my glasses and I could hardly see. I can't remember if there were cars parked along the curb there."

"I don't know how it happened that I got hit. The first thing I remember after being hit I was sitting on the running board of a car."

All the witnesses testified that a heavy rain was falling when the accident occurred. Mary Weber testified that Helen Major and Charles Loomis were with her in the car; that after leaving Central high school, she drove down Cass street to Sixth street, then north on Sixth; and that she was going between ten and fifteen miles an hour following a car immediately ahead. That she noticed a boy crossing Sixth street from the west, and when she got opposite the store building, she heard a scream and immediately noticed a boy lying in the street to the left of her car about even with the left front fender. She testified that the brakes were in good condition, that the windshield wipers were working, and that she

brought her car to a stop in about the length of the car. She denied that her car struck Donald.

Upon her adverse examination before trial, she testified that immediately before the accident Donald ran out into the street from between two parked cars on the west side of the street, and that she lost track of him when he was about in the center of the street at a point opposite the front door of the car ahead of her; that she then heard a scream and saw Donald lying in the street.

Helen Major testified that she saw a boy crossing the street from the west to the east side when the Weber car was between one hundred and one hundred fifty feet south of where the accident occurred. The boy got out of her sight when he passed in between automobiles parked on the east side of the street. She saw only the one child in the street, and that was the one that had crossed from the west to the east side. She did not see Donald come out into the street from the east side and she could not identify him as the child that she had seen, shortly before, crossing from the west to the east side of the street. She heard a scream and then saw a boy lying in the middle of the road, to the left, ahead of the Weber car.

Charles W. Loomis testified that he sat on the right side of the front seat in the Weber car. The car was going between ten and fifteen miles an hour, and as it reached a point about opposite the store building on the east side of Sixth street, he saw Donald come out to the east curb and glance nervously both ways, and then, just disappear. At this time the Weber car was between fifteen to twenty feet south from where he saw Donald standing on the east curb. He did not see Donald or any other child crossing from the west to the east side of the street. He did not see him come out into the street from the east curb. Right after he lost sight of him, he heard a thud. He saw no other children on the sidewalk on either side of the street.

It appears that Charles Loomis, eighteen years of age, made and signed a written statement relative to the accident, on September 20, 1938, which was offered and received in evidence, the material part of which is as follows:

"I was riding with Mary Weber at the time of the accident in which *the car ahead of us struck a small boy,* under date of September 14th. At the time, the driver, Mary Weber, was going about ten miles per hour. . . . When we were about half way up the block on Sixth street between Main and King streets, there was a blue car . . . right ahead of us. The little Hanson boy had run into the street, and when about half way across the street, tried to stop when he saw the cars coming. Due to the rain, the street was slippery, and he slipped into the blue car. However, this blue car did not stop. . . . It was not our car which hit the boy. This is a true statement of how I feel this boy was hurt."

At the trial, Loomis was called as a plaintiff's witness. After the introduction of the foregoing statement in connection with his cross-examination, upon his redirect examination he testified concerning the foregoing statement in substance as follows: That the language used in the statement was not his. He did not see the statement typed and was sure that it was not his own description as given in his own words. He couldn't quite remember, but that it seemed that the statement was typed while he was there in the office. He couldn't remember a thing; that he was sort of frightened when Mary Weber said she didn't strike the boy; and that he was just all excited. That Mr. Hanson came to see him and told him he wanted the facts, that he should tell the truth. He realized that he was under oath, that it would be perjury to make a false statement, and that he was giving the jury the truth as to how this accident happened and as to what he saw.

There is no direct testimony that the Weber car struck Donald Hanson. Donald testified that he didn't know how it happened that he got hit. Loomis testified that he heard a thud which jolted the Weber car. The issue as to whether

Donald sustained his injuries by a collision with the Weber car was submitted to the jury and was answered in the affirmative. The trial court permitted the answer to stand. The testimony of Loomis is very unsatisfactory in view of his testimony at the trial in contradiction of his signed written statement given only a few days after the accident occurred. However, it was for the jury to say on which occasion he told the truth. Under all the facts and circumstances, the issue was for the jury.

This is not the case of a child being injured while at play in the street or in the immediate vicinity of the street where an automobile operator must exercise a high degree of care because of the presence of children.

Because of the heavy rainfall and the traffic in the street immediately ahead of and to the rear of the Weber car, Mary Weber was required to give and did give close attention to the management and control of her car; in which respects, the jury found she was not negligent. Her attention was also directed to the boy who had come out into the street from between the parked cars on the west side.

The Weber car was traveling to the right of the center line of the street. The right side of the car was not more than fourteen or fifteen feet from the east curb. According to the testimony of Loomis, Donald was standing at the east curb when the Weber car was between fifteen to twenty feet south of the point where the accident occurred. If Donald darted out into the street at a time when the Weber car was only fifteen or twenty feet south of the point of the accident, it is obvious that he paid no attention to the presence of the Weber car. He traveled at least as fast, if not a little faster, than the car did. At ten miles per hour, the car would cover about twenty feet in one and one-half seconds. When Loomis saw Donald standing at the east curb, he could only see the upper portion of his body. It is evident that Donald darted into the street from a position where only the upper part of his body was visible. Either a parked car or some

other object stood in the way of a clear view. If the defendant Mary Weber had seen him standing at the east curb at the same time that Loomis says he saw him there, she would have no reason to anticipate that he would run out into the street in the lane of traffic—and in this connection it should be noted that Donald attempted to cross the street in about the middle of the block. We fail to find any evidence to sustain the finding that Mary Weber was negligent in respect to keeping a proper lookout. There being no evidence to sustain this finding, there is no support for the finding that she was negligent in not stopping her car prior to the collision.

What is said in *Wachsmuth v. Wachsmuth,* 210 Wis. 683, 247 N. W. 327, is applicable in the instant case. At page 689 the court said:

"In this case a child of the tender age of about four years, in the middle of a block heedlessly ran into the side of a car being driven with ordinary care (unless it may be said that an automobile driver must not only maintain a lookout ahead and to his diagonal right and left but must continue also to maintain a lookout directly to his right). We think that no such impossible burden or unreasonable duty is or should be imposed upon drivers of automobiles. Although the result is unfortunate for the plaintiff, our duty is plain under the circumstances. There being no credible evidence to sustain the jury's finding of negligence there can be no liability."

Appellant relies on such cases as *Schmidt v. Riess,* 186 Wis. 574, 203 N. W. 362; *Stoffle v. Hilker,* 189 Wis. 414, 207 N. W. 685; *Ruka v. Zierer,* 195 Wis. 285, 218 N. W. 358; *DeGroot v. Van Akkeren,* 225 Wis. 105, 273 N. W. 725, all of which present an entirely different factual situation.

The facts in the instant case in support of recovery are much weaker than in *Kammas v. Karras,* 179 Wis. 12, 190 N. W. 849. On the evening of July 22d at about 7 o'clock, a boy, three and one-half years old, ran into the street and was struck by the left front side of defendant's truck. It

does not appear that there was anything to obstruct the truck driver's view of the child on the sidewalk. The driver did not see the boy until he was within a foot or so of the truck. The trial court granted a nonsuit on the ground that no negligence of defendants was shown. On appeal, this court held as a matter of law that there was no negligence on the part of defendants. The court said at page 15:

"The fact that the boy was seen on or near the sidewalk on the opposite corner as the truck made the turn could not charge the defendants with knowledge that he would attempt to cross the street and overtake the truck."

See also *Schmidt v. Heim,* 200 Wis. 608, 229 N. W. 33.

There being no evidence to sustain the jury's findings of negligence on the part of Mary Weber as to lookout and in not stopping her car before striking Donald, there can be no liability. The trial court properly set aside the jury's findings in these respects.

*By the Court.*—Judgment affirmed.