SALEY, Administratrix, Appellant, vs. HARDWARE MUTUAL CASUALTY COMPANY and others, Respondents.

*March 13—May 1, 1945.*

*Franklin E. Fogo* of Richland Center, for the appellant.
*O. D. Black* of Richland Center, for the respondents.

FRITZ, J.   There is no material conflict in the evidence. The collision, as the result of which Henry Saley was fatally injured, happened about 5 p. m. on May 25, 1944, when a Ford automobile driven by him and a truck driven by the defendant Janney collided while going in opposite directions around a sharp blind curve in a graveled county highway, the traveled portion of which was nineteen feet wide.   Saley, driving in a southwesterly direction, had just crossed a twenty-feet-wide iron bridge to the curve, which immediately turned to his left, and he was following the inside of the curve. Young willows growing along that side, with branches extending to the roadway, prevent travelers going in either direction from seeing ahead around the curve more than fifty to sixty feet.   At a point twenty-one feet south of the bridge the truck, approaching from the southwest, collided with Saley's Ford, which at the time of the impact was eight feet four inches from the east edge of the traveled roadway, and consequently at least one foot east of the center thereof.   The approaching Ford's tire tracks as it was crossing the bridge showed it was then on the east half of the roadway, three and one-half feet from the east railing, and that Saley was turning it toward his right side when the cars collided.   On the other

hand, as the truck approached the point of impact it was and continued wholly on Janney's right half of the roadway. The sheriff who, shortly after the collision and before the cars had been moved, examined the truck's tracks, testified they showed that its brakes had been set and the tires skidded twenty to twenty-five feet before the collision took place; and that, based upon these skid marks, it was his opinion that the speed of the truck was fifty to sixty miles per hour, but that "It is difficult to estimate speed within ten or twenty miles when you base your opinion on tire marks." Janney testified he was traveling at forty to forty-five miles per hour as he approached the curve; that he did not see the Ford approaching until it was fifty or sixty feet away, and as soon as he saw it, he tried to stop by setting his brakes, which were in good order, but the distance was too short to allow him to do so; that his wheels skidded and he could not stop before the collision occurred on his right side of the road; and that he did not have room to pass to the right of the Ford, and could not drive closer to the right side of the road and avoid the collision, but would have done so if he could. As to these matters, the sheriff testified:

"There would have been room for the truck to have passed to the right of the Saley car by putting the truck wheels into the dirt a little bit. . . . A car can be driven around a curve faster than a truck and remain in control, because a car is better balanced and lower to the ground. A truck is not so evenly balanced because you have a load in your rack and the load is top heavy usually. The car has a lower center of gravity."

In colliding the front of the truck struck the left front wheel and fender, and the left side of the radiator and hood of the Ford at an angle of about forty-five degrees. Its left front wheel and spindle were broken, and it was shoved by the truck twenty-one feet northward and across the road to the northwest railing of the iron bridge so as to bend that

railing. The entire front of the truck was caved in, both headlights were broken off, the grill and radiator were smashed, and its axle was sprung and the frame severely bent. After the collision it was standing almost squarely across the road at the west end of the bridge, with its rear somewhat southwest of its front; and its skid marks and the torn up gravel for twenty-five feet immediately before reaching the point of impact showed that its brakes had been set. Saley survived until June 15, 1944, but he was so seriously injured that his testimony was not taken.

The jury found that Saley was causally negligent in respect to keeping a proper lookout, and driving on the east half of the roadway; that Janney was not negligent in respect to keeping a proper lookout; but that he was causally negligent in respect to speed, and also management and control; and that of the total causal negligence twenty-eight per cent was attributable to Saley and seventy-two per cent to Janney. The court, in deciding the motions after verdict, approved the jury's findings as to Saley's negligence in both respects; and also as to Janney's negligence in respect to speed, and that he was not negligent in respect to lookout. But the court set aside the jury's finding that Janney was negligent as to "management and control;" and in lieu thereof found he was not negligent in this respect. Upon the findings as thus changed, the court substituted for the jury's answer as to comparative negligence a finding that there was attributable to each driver fifty per cent of the total causal negligence; and thereupon ordered judgment dismissing the complaint.

Plaintiff contends that the physical facts show the truck was out of control and there was credible evidence to support the jury's verdict, and therefore the court erred in changing the jury's findings that Janney was negligent in respect to management and control; and that where all of the negligent acts differed in character the court erred in changing the jury's findings as to comparative negligence. These con-

tentions cannot be sustained. By a specific finding in relation to speed the jury found that Janney was negligent in that respect. But otherwise than in so far as the speed at which he was driving could be considered to admit of also finding him negligent in his management and control, there is no evidence of any other act, omission, or conduct on his part which can be deemed to sustain the finding that he was negligent in his management and control of the truck. As the trial court said,—

". . . there is no evidence to sustain the jury's finding that the defendant driver [Janney] was negligent as to management and control of his truck. He was at all times on his right side of the road. He had a right to assume that no other vehicle would be ahead of him going in the opposite direction on his side of the road, in direct violation of a safety statute. He had a right to continue in that assumption until it clearly appeared that some other user of the highway was invading the truck driver's path of the roadway. When he so discovered the fact he applied brakes but could not avert the accident. He was at all times on his right side of the road, apparently alert and discovered the approaching vehicle as soon as it was in sight. Plaintiff claims that the defendant driver had room to get around the plaintiff's car instead of applying his brakes. The court very much doubts the ability of any driver to manipulate his truck through a space where there was at best only a mathematical possibility of squeezing through. However, the defendant driver cannot be held negligent because he did what he thought was the best thing to do, namely, apply his brakes and attempt to stop his truck. In *Driessen v. Moder,* 233 Wis. 416 at 419 with reference to a somewhat similar situation, the court said: 'He (the defendant) cannot be charged with negligence as to control merely because he did not do something else when by applying his brakes he took a course which on the spur of the moment to him seemed likely to avoid the collision.' In the court's opinion any statement that the truck was out of control is a mere guess or speculation with no credible evidence to support it. It could not, therefore, have been a cause of the collision as found by the jury in answer of subdivision (b) of question 2."

The reasons thus stated warranted the court's conclusion that it was "compelled, therefore, to change the jury's answer" finding Janney causally negligent in respect to management and control. Moreover, as in this case the only basis under the evidence for a determination by the jury that Janney was negligent in respect to his management and control is the evidence in relation to the speed at which he was going, the jury's separate findings as to negligence in respect to his speed, and also management and control, virtually overlap, and therefore could not have been considered as cumulative in determining the issue of comparative negligence, if the court had not changed the jury's findings in respect to management and control. *Guderyon v. Wisconsin Telephone Co.* 240 Wis. 215, 2 N. W. (2d) 242; *Callaway v. Kryzen,* 228 Wis. 53, 279 N. W. 702.

Furthermore, in relation to negligence on the part of Janney in respect to speed, the trial court rightly concluded,—

"If the speed of the truck had been only fifteen or twenty miles per hour, and with the plaintiff's intestate's automobile on the wrong side of the road, and in view of the short visibility on the curve, the accident might just as well have happened as it did with the speed of the truck much greater than fifteen or twenty miles an hour. It is the carefully considered opinion of the court that the speed of the truck was, if any, but a slight cause of the collision and that it was caused in large degree by the negligence found by the jury" in relation to Saley.

As we said in *Clark v. McCarthy,* 210 Wis. 631, 635, 246 N. W. 326,—

"When two cars proceeding upon a highway in opposite directions collide, the speed of either or both vehicles can only contribute to the accident in connection with some circumstance. For example, if the speed of the vehicle contributes to want of control or to its presence on the wrong side of the highway, it may be considered one of the causes of the

collision. It is difficult to see, however, how the mere speed of a vehicle can be a factor in such an accident, provided both cars maintain their proper place on the highway, and provided the highway itself is wide enough to permit them to pass each other without interference."

But, even if negligence of Janney in respect to speed and also control and management were to be considered cumulative causes, in view of Saley's causal negligence in respect to the position of his car on the roadway, and also his lookout, the following conclusions stated in *Konow v. Gruenwald*, 241 Wis. 453, 456, 6 N. W. (2d) 208, are quite applicable here, to wit:

"The jury found here that plaintiff was on the wrong side of the road. There is no evidence that the road was not wide enough for the two vehicles to pass each other; all the evidence is to the contrary. If defendant was on the right side of the road, it is difficult to see how his speed or his management or control contributed to the accident. If plaintiff was on the wrong side of the road, his speed was unimportant except as it affected his chance to extricate himself from the dangerous position in which he found himself by reason of his driving on the wrong side of the road. Both parties were found negligent as to lookout, and while it is true the fact that both parties were negligent in the same respect does not mean that their negligence was equal, it would seem that here the greater fault, if one was greater than the other, is to be attributed to the driver of the car who was driving in the middle of the road."

*By the Court.*—Judgment affirmed.